## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**RICHARD RIGHTMIRE,**

      **Petitioner,**

**v.**                                                              **Case No.  4:14cv103-RH/CAS**

**STATE OF FLORIDA,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 20, 2014, by the mailbox rule, Petitioner Richard Rightmire, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Also on February 20, 2014, Petitioner filed a motion to hold ruling in abeyance until a proceeding filed in the Florida Supreme Court was concluded.  ECF No. 2.  The motion was denied in an order explaining that the pendency of this federal petition does not prohibit Petitioner from proceeding in state court.  ECF No. 6 at 3.  The order also directed the Respondent to file an answer, motion, or other response, ECF 6 at 3, and the response was filed on October 8, 2014.  ECF No. 11.  Petitioner filed a reply on December 24, 2014.  ECF No. 15.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

By second amended information filed August 17, 2006, in case number 05CJ01718, in the Second Judicial Circuit, Leon County, Florida, Petitioner was charged with the following:

**Count 1**, promoting a sexual performance by J.O., a child less than 18 years of age, in violation of section 827.071(1)-(3), Florida Statutes;

**Counts 2 through 76**, possession with intent to promote child pornography in violation of 827.071(4), Florida Statutes;

**Count 77**, failure to appear in violation of section 843.15(1)(a), Florida Statutes;

**Counts 78 through 83**, lewd or lascivious battery on J.O., a person 12 years old or older but less than 16 years old, on or before November 15, 2004, in violation of section 804.04(4)(a), Florida Statutes;

**Counts 84 through 88**, unlawful sexual activity with J.O, a person 16 or 17 years of age by defendant 24 years of age or

older, between November 16, 2004, and May 5, 2005, in violation of section 794.05, Florida Statutes; and

**Counts 89 and 90**, contributing to the delinquency of a minor on or before May 5, 2005, in violation of section 827.04(1), Florida Statutes.

Ex. C at 12-20.[1]

Petitioner proceeded to a jury trial and was found guilty as charged on all counts except 83 and 85, for which a judgment of acquittal was granted. Ex. E at 233, 235. By Judgment and Sentence rendered October 4, 2006, Petitioner was adjudicated guilty and sentenced to 15 years imprisonment on Count I; a consecutive term of 15 years on Count 2 (encompassing but not adjudicating or sentencing on Counts 3 through 76); a consecutive term of 5 years on Count 77; terms of 15 years each for Counts 78 through 82 concurrent with each other but consecutive to the sentence in Count 77; terms of 15 years each on Counts 84 and 86 through 88 concurrent with each other but consecutive to the sentences for Counts 78 through 82; and concurrent terms of 273 days each on Counts 89 and 90 to run concurrently with the sentence in Count 1. Ex. C at 187-94; Ex. G at 16-21. In sum, Petitioner was sentenced to an aggregate 65 years imprisonment. Credit was given for 273 days of time served. Ex. C at 191.

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 11.

Petitioner appealed to the First District Court of Appeal, which per curiam affirmed without opinion on August 6, 2008.  Ex. C at 201, H, I, J; *see* Rightmire v. State, 987 So. 2d 83 (Fla. 1st DCA 2008).  The First District's mandate was issued on August 22, 2008.  Ex. K.  The issues presented on direct appeal were whether the trial court erred in not granting the motion for judgment of acquittal on several counts, and whether the trial court erred in not granting a motion to vacate judgment and sentence for Counts 3 through 76, including whether the greater weight of the evidence supported a conviction.  Ex. H at 8.

On June 4, 2008, Petitioner filed a motion seeking the release of the audio recording of his trial.  Ex. V at 1-3.  The state court denied that motion, Ex. V at 4, and Petitioner appealed. Ex. V at 5.  On December 11, 2008, Petitioner filed a notice of voluntary dismissal of that appeal, Ex. W, and the First District dismissed the appeal on December 18, 2008.  Ex. X.

On October 5, 2008, Petitioner filed a motion to mitigate or reduce sentence under Florida Rule of Criminal Procedure 3.800(c), alleging as mitigation the fact that the victim was an active and willing participant.  Ex. Z at 281-86.  The motion was denied on October 15, 2008.  Ex. Z at 287.

Petitioner filed a petition in the First District Court of Appeal on March 17, 2009, alleging ineffective assistance of appellate counsel and also

seeking a belated direct appeal of his judgments and sentences.  Ex. FF.
This petition alleged that appellate counsel failed to raise as error on direct
appeal the trial court's failure to hold an adequate "Nelson" hearing prior to
opening argument and failure to appoint new counsel.  Ex. FF at 3-9.  The
district court denied the petition on the merits on April 15, 2009.  Ex. GG;
Rightmire v. State, 8 So. 3d 462 (Fla. 1st DCA 2009).  The motion for
rehearing or clarification was denied on June 10, 2009.  Ex. HH; Ex. II.

On June 22, 2009, Petitioner filed a motion for post-conviction relief in
the trial court alleging that his sentence was illegal for failure to receive jail
credit while being extradited.  Ex. Z at 322.  Petitioner's post-conviction
motion was treated as a motion to correct illegal sentence and request for
jail credit under Rule of Criminal Procedure 3.800(a).  On June 26, 2009,
the state circuit court granted Petitioner an additional 47 days, for a total of
320 days of time served.  Ex. Z at 329.

On August 3, 2009, Petitioner filed a motion to correct illegal
sentence under Rule 3.800(a), alleging that he was found guilty of Counts 3
through 76, but was not adjudicated or sentenced on those counts.  He
contends that the court should therefore direct a judgment of acquittal on
those counts.  Ex. Z at 337-38.  The motion was denied by order entered
September 16, 2009, on the grounds that even if leaving those counts

without adjudication and without sentence may be error, the error was

subject to direct appeal and is not cognizable in this motion to correct

sentence. Ex. Z at 345. Petitioner appealed the denial of this motion to the

First District Court of Appeal. Ex. Z at 350; Ex. AA. The State filed no

answer brief, Ex. BB, and the district court affirmed per curiam without

opinion on April 29, 2010. Ex. CC; s*ee* <u>Rightmire v. State</u>, 34 So. 3d 7 (Fla.

1st DCA 2010).

On August 23, 2010, Petitioner filed a motion for post-conviction relief

under Florida Rule of Criminal Procedure 3.850, which was amended on

October 4, 2010. Ex. KK at 1. The amended motion raised twelve claims

for relief.[2] Ex. KK at 86-110. Pursuant to order, the State responded to the

amended motion for post-conviction relief. Ex. KK at 115, 117. The post-

---

[2] The post-conviction claims raised in the state court were: (1) trial counsel provided
ineffective assistance of counsel (IAC) in failing to file a motion to suppress items seized
from defendant's premises; (2) IAC for counsel's failure to file a motion to dismiss the
search warrant issued by a non-criminal magistrate; (3) IAC in counsel's failure to file a
motion in limine to exclude hearsay of victim's mother; (4) IAC in counsel's failure to
present a meritorious defense that the victim testified falsely to prevent her parents from
discovering her sexual activity with her boyfriend; (5) IAC in counsel's failure to file a
motion to suppress the controlled telephone call made without permission of the victim's
parents; (6) IAC for counsel's failure to file a motion for a statement of particulars to
narrow the time frame of the crimes charged; (7) IAC in counsel's failure to properly
convey the plea offer. (8) IAC in counsel's failure to object to vindictive sentencing;
(9) IAC in counsel's failure to object to the illegal sentence imposed; (10) IAC in
counsel's failure to properly advise defendant on his right to testify and to gain
defendant's confidence in counsel; (11) IAC in counsel's failure to properly object to the
use of the word "audience" during the jury instructions; and (12) IAC in counsel's failure
to renew objection to double jeopardy resulting from admission of multiple photographs,
which was raised in the motion for judgment of acquittal.

conviction court granted an evidentiary hearing and appointed counsel to represent petitioner.  Ex. KK at 281, 287.  At the evidentiary hearing held on January 11, 2013, Petitioner asked to represent himself and was allowed to do so.  Ex. KK at 293-402.

Post-conviction relief was denied on the record of the hearing, Ex. KK at 393-399, and by written order entered January 11, 2013.  Ex. KK at 290. Petitioner, proceeding pro se, appealed to the First District Court of Appeal, Ex. KK at 291, which affirmed per curiam without opinion on October 24, 2013.  Ex. OO.  Rehearing was denied and the mandate was issued on December 20, 2013.[3]  Ex. PP, QQ, RR.  *See* Rightmire v. State, 145 So. 3d 102 (Fla. 1st DCA 2013).

On February 20, 2014, Petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court, which was transferred to the First District Court of Appeal.  Ex. VV, TT.  The Petitioner alleged that his appellate counsel was ineffective and had subsequently been the subject of proceedings brought by The Florida Bar.  Ex. VV at 3.  After the state district court issued an order to show cause to Petitioner to show why

---

[3] The claims raised on appeal from denial of postconviction relief were: (1) the court erred in failing to view the sheriff's interview video of Petitioner, which would show he was denied his Fifth Amendment rights; and (2) the post-conviction court erred in finding trial counsel was not ineffective during the preparation for trial and defense at trial, and in denying all Petitioner's IAC claims.  Ex. LL at 1, 15.

sanctions should not be imposed against him concerning his pro se filings, Ex. WW, Petitioner filed a reply.  Ex. XX.  On June 14, 2014, the district court dismissed the petition on the grounds that habeas corpus cannot be used to litigate issues that could have been, or were, raised on direct appeal or in post-conviction proceedings.  Ex. YY at 1-2.  The district court further ordered that Petitioner is prohibited from future pro se filings in the court concerning these convictions and sentences due to his continued and repeated attacks on the convictions and sentences that have become an abuse of the legal process.  Ex. YY at 2; *see* <u>Rightmire v. State</u>, 140 So. 3d 685 (Fla. 1st DCA 2014).

Petitioner filed his petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 on February 20, 2014.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S. Ct. at 1388.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).  Where federal claims are properly raised in a habeas

proceeding, "[b]efore a federal court may grant habeas relief to a state

prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan

v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  Petitioner

must have exhausted all means of available relief under state law.  In order

for remedies to be exhausted, "the petitioner must have given the state

courts a 'meaningful opportunity' to address his federal claim." Preston v.

Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015)

(quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  The

petitioner must have apprised the state court of the federal constitutional

claim, not just the underlying facts of the claim or a "somewhat similar

state-law claim." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir.

1998).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness." *Id.* at 688. The proper standard is "reasonably effective assistance." *Id.* at 687. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel is also presumed to have "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Both prongs of the Strickland test must be satisfied in order to establish ineffective assistance of counsel, and if the claim can be disposed of on one prong, the court is not required to address the other prong. *See id.* at 697; *see also* Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

For this Court's purposes in federal habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

Any "determination of a factual issue made by a State court shall be presumed to be correct" and the Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1*).*  Where the state court's determination is challenged on a factual basis, the federal court may overturn the decision only if it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Burt v. Titlow, 134 S. Ct. 10, 15 (2013) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

Petitioner raised 15 claims for habeas corpus relief in his § 2254 petitioner in this Court

> 1. Trial counsel was ineffective in failing to move to suppress evidence seized from his property pursuant to an illegal search.  ECF No. 1 at 5;

2.  Trial counsel was ineffective in failing to file a motion to dismiss the search warrant issued by a non-criminal magistrate judge.  ECF No. 1 at 6;

3.  Trial counsel was ineffective in failing to file a motion in limine to prevent hearsay statements from the victim's mother to be used as substantive proof of guilt.  ECF No. 1 at 7.

4.  Trial counsel was ineffective in failing to present the meritorious defense that the victim falsely accused the defendant to conceal her sexual activity with a boyfriend from her parents.  ECF No. 1 at 8;

5.  Trial counsel was ineffective in failing to file a motion to suppress the recorded controlled telephone call with the victim, which was without parental permission.  ECF No. 1 at 9;

6.  Trial counsel was ineffective in failing to file a motion for statement of particulars in order to narrow the time frame of the alleged sexual assaults.  ECF No. 1 at 10;

7.  Trial counsel was ineffective in failing to properly convey the State's plea offer.  ECF No. 1 at 11;

8.  Trial counsel was ineffective in failing to object to the vindictive sentencing.  ECF No. 1 at 12;

9.  Trial counsel was ineffective in failing to object to the illegal sentence.  ECF No. 1 at 13;

10.  Trial counsel was ineffective in failing to properly advise the defendant of his right to testify and in failing to gain defendant's confidence in the defense used.  ECF No. 1 at 14;

11.  Trial counsel was ineffective in failing to properly object to use of the word "audience" in the jury instructions in order to preserve the issue for appeal.  ECF No. 1 at 15;

12.  Trial counsel was ineffective in failing to renew the objection to double jeopardy violations concerning the multiple photographs and multiple counts.  ECF No. 1 at 15;

13.  The trial court erred in not granting a judgment of acquittal.  ECF
No. 1 at 16;

14.  The trial court erred in not granting a motion to vacate judgment
and sentence on Counts 3 through 76.  ECF No. 1 at 17; and

15.  Appellate counsel was ineffective in failing to argue that the trial
court erred by not granting Petitioner new counsel following a
"Nelson" hearing.  ECF No. 1 at 17.

## Ground 1: Suppression of Evidence

Petitioner contends that trial counsel was ineffective in failing to move

to suppress items seized from his property because officers sought a

warrant only after interrogating him in violation of his constitutional rights.

He states:

> [S]ome aspect of the afore mentioned interrogation provided
> some missing element or, by a speech pattern, intonation,
> syntax or possibly even by the Petitioner asking for his
> Constitutional Rights, did cause the detective in charge to seek
> out a warrant which was only obtained after this interrogation
> and after the Petitioner had asked for and invoked his rights
> and had been denied those same rights.

ECF No. 15 (Reply) at 3-4.  Petitioner contends he was denied his right to

consult with an attorney by Detective Todd Lombardo and that Detective

Lombardo altered official documents and testified falsely at his deposition

in order to conceal his wrongdoing.  ECF No. 15 at 4-5.  Petitioner

contends his trial counsel was "lulled" into believing the Detective's version

of events, causing counsel not to investigate, and that counsel adhered to

this fabricated version at the evidentiary hearing when he claimed

Petitioner had an inaccurate chronology of events.  ECF No. 15 at 7, 11.  In

the course of explaining this claim, Petitioner also alleges the post-

conviction court improperly prevented Petitioner from showing the video of

his interrogation and from presenting the search warrant.  ECF No. 15 at 9.

Respondent argues that at the evidentiary hearing, Petitioner failed to

set forth what information was given during the police interview that

purportedly served as the basis for the search warrant.  ECF No. 11 at 12.

Respondent also points out even if Petitioner invoked his right to counsel at

the interview, the police had information obtained before the interview from

a controlled telephone call between Petitioner and the victim in which

Petitioner made incriminating statements and told the victim she should

have never kept the pictures that he had told her earlier to destroy.  ECF

No. 15 at 13-14.  Finally, Respondent points out that the affidavit

supporting the warrant, which was admitted into evidence at the evidentiary

hearing, does not focus on any statements Petitioner made to officers

during interrogation.  That affidavit provided:

> On 05-11-05 at approximately1824 hours Deputy Richard Ash
> responded to 6240 Brushy Creek Road in reference to J.O., a
> while female minor 16 years of age, who alleged she was
> sexually active with Mr. Richard Rightmire 05-27-49, a
> neighbor.  Deputy Ash then contacted Detective Lombardo the

on call Investigator. Detective Lombardo responded and made contact with J.O. who related the below:

J.O. said that she met Rightmire because he was a family friend who lived across the street.  J.O. began going over to Rightmire's residence when she was 13 years of age to walk his dogs and feed them on occasion.  Rightmire would buy J.O. gifts and give her money for taking care of the dogs.  J.O. said she would receive $15.00 if Rightmire was home and $20.00 if he was gone.  This went on for approximately two years.

J.O. said that Rightmire began inappropriate behavior by showing her animated pornography on his computer sometime when she was 15 years of age (approximately a year and half ago).  Rightmire then began to engage J.O. in conversations about sexual activity.  J.O. did not recall when or what took place to start the sexual activity between her and Rightmire. J.O. said that Rightmire has had her perform oral sex on him on numerous occasions, too many for her to remember.  J.O. said Rightmire has also had oral, vaginal, and on one occasion attempted anal sex with her.  J.O. said Rightmire has penetrated her vagina with sexual toys (Vibrators), fingers, his tongue, and his penis.  J.O. said that they have experimented with bondage.  J.O. said Rightmire has taken digital photographs of her in the nude.  J.O. said Rightmire gave her three of the nude photos to keep.  J.O. said Rightmire has bought her several sexual toys, and condoms.  The photos, toys and condoms were turned over to Detective Lombardo as evidence.  J.O. said that Rightmire keeps the photos on his computer at his residence, and that there were several more. J.O. said that 05-05-05 (Thursday) the last time she had sexual conduct with Rightmire.  J.O. said this consisted of Rightmire penetrating her vagina with his tongue.  J.O. said Rightmire has given her alcohol and Percocet on separate occasions.  J.O. said Rightmire is also growing 4 or 5 marijuana plants for her. All of the sexual activity has occurred at Rightmire's residence per J.O.

On 12 May 05, J.O. made a controlled phone call to Rightmire in the presence of Deputy Lombardo.  The phone call was recorded by audio tape. J.O. made mention to Rightmire that her mother found the sex toys (vibrators) in her drawers and

Case No. 4:14cv103-RH/CAS

that she lied to her mother saying that a friend gave them to
her. Mr. Rightmire never denied giving the sex toys to her. J.O.
mentioned that her mother found the nude photographs that he
(Mr. Rightmire) had taken. Mr. Rightmire replied, "I thought you
threw uh tore those up." J.O. replied that she had only torn up
one of them. Mr. Rightmire replied "uh boy." Mr. Rightmire
asked "where did you tell them the pictures were taken at." She
told him she told her parents that they were taken at a friend
Danny's house. He indicated that she should not have kept
"that stuff" and that he thought she had thrown "that stuff" away.

Mr. Rightmire was taken into custody on 13 May 05. Mr.
Rightmire was transported to the Sheriff's Office for an
interview. He denied having sexual contact, giving her sex
toys, and taking nude photographs of J.O.

Your Affiant has been a Leon County Sheriff's Deputy for
approximately 14 years and is currently assigned to the Violent
Crimes Unit.

Ex. KK at 404 (Def. Ex. 1 p. 3). The search warrant, issued by Judge

James O. Shelfer on May 13, 2004, and this affidavit, were admitted into

evidence at the post-conviction evidentiary hearing held January 11, 2013.

Ex. KK at 348, 404 (Def. Ex. 1 at p. 3-4). The video of Petitioner's

interrogation was also admitted into evidence as Defense Exhibit 2, but

was not viewed at the hearing. Ex. KK at 362.

At the evidentiary hearing, Detective Lombardo testified that it was

after the controlled telephone call between Petitioner and the victim that

Petitioner was arrested. Detective Lombardo testified that after that arrest,

Petitioner was taken back to his residence and, when the search warrant

arrived, a copy was given to Petitioner and the property was searched. Ex.

KK at 342-43.  The detective later agreed that this chronology was

incorrect, and that the search was executed after the interview.  Ex. KK at

352-53.

Petitioner contends that this corrected version of events is significant

to his ineffective assistance of counsel claim because the erroneous

deposition and trial testimony about the chronology of events "lulled" his

counsel into believing that what occurred at the interview was not important

to the validity of the search warrant.  Petitioner is correct that Detective

Lombardo's testimony, and the language of the affidavit, bear out

Petitioner's characterization that the interview did, in fact, take place before

the issuance of the search warrant.  The post-conviction court ruled,

however, that any statements made by Petitioner in the interview, and any

requests for counsel that he might have made in the interview, were

irrelevant to the execution of the search warrant, further noting that his

statements made in the interview were not introduced at trial.  Ex. KK at

347, 352.  The judge stated on the record of the evidentiary hearing:

> The fact you exercised a right to counsel in the statement, even
> whenever it would have been, has nothing to do with the
> execution of a search warrant.

Ex. KK at 347.  Petitioner's trial counsel testified at the evidentiary hearing

that the evidence seized by law enforcement did not come as a result of

any custodial interrogation but was a result of things that occurred prior to the interrogation.  Ex. KK at 307.  Petitioner was allowed to submit a video copy of his interview with officers, even though the court continued to rule that anything he said or did at the interview was irrelevant to the validity of the search warrant and the search conducted pursuant to it.  Ex. KK at 361-62.

Petitioner's contention that because the search warrant was obtained after his interrogation, the issuance of the warrant must have been based on what occurred at the interrogation is without merit.  Respondent correctly notes that the only statements by Petitioner that are mentioned in the affidavit are his denials that he had sexual contact, took nude photographs, or gave sex toys to J.O.  The affidavit supporting the search warrant and trial counsel's testimony at the evidentiary hearing demonstrate that the search warrant was not based on any statements Petitioner made at the interrogation but was based on information received from J.O. and from the controlled telephone call between J.O. and Petitioner, which occurred prior to the arrest, interrogation, issuance of the warrant, and the search.

Petitioner has failed to show that his counsel was deficient in not moving to suppress the items seized on the basis of an argument that the

warrant relied on information obtained in violation of his right to counsel, which he contends he invoked during his interview.  The affidavit is based on information provided by the victim and by the controlled telephone call. The post-conviction court correctly ruled that ineffective assistance had not been shown because the record shows there was no basis to attack the search warrant.  Ex. KK at 393.  Deference is due to this state court ruling. *See* <u>Cullen</u>, 131 S. Ct. at 1398.  Petitioner must show deficient performance under <u>Strickland</u> and failed to do so.  The post-conviction court's ruling is not contrary to, or involving an unreasonable application of, clearly established Federal law as determined by the Supreme Court.  Nor has Petitioner shown that the decision was based on an unreasonable determination of the facts, as is required for relief to be granted under 28 U.S.C. § 2254(d).

For these reasons, habeas relief on Ground 1 should be denied.

## <u>Ground 2:  Dismissal of the Search Warrant</u>

In this ground, Petitioner contends that his trial counsel was ineffective in failing to file a motion to dismiss the search warrant on the basis that it was issued by a "non-criminal magistrate" who was a "misdemeanor judge."  ECF No. 1 at 6.  He contends that if a "felony judge" had signed the warrant, the judge would have found that the description of

the evidence to be seized was overbroad, and that if his counsel had moved to dismiss the warrant, it would have been dismissed.  ECF No. 1 at 7.

To obtain habeas relief in federal court, the federal claims must have been fairly presented in "each appropriate state court."  *See* Baldwin v. Reese, 541 U.S. 27, 29 (2004).  This claim was raised in Petitioner's post-conviction motion in the state court but was not raised in his appeal of denial of post-conviction relief.  All claims for which an appellant has not presented any argument are waived on appeal.  Doorbal v. State, 983 So. 2d 464, 482-83 (Fla. 2008).  Because the claim was not exhausted in the state courts, it is procedurally defaulted, and Petitioner has not shown any cause for and prejudice from the default.

Regardless of any default, the ground should be denied on the merits.  Petitioner contended without citation of authority in his post-conviction motion that all felony search warrants must be signed and evaluated by "sitting felony court justices."  Ex. KK at 6.  The post-conviction court denied the claim, concluding trial counsel had not been shown to be ineffective because the invalidity of the warrant had not been proven.  Further, the court found that the record established that the judge

who signed the warrant was a "judge of this circuit" and was "legally empowered to issue the warrant."  Ex. KK at 394.  This ruling was correct.

Section 933.01, Florida Statutes, provides that a search warrant may be issued by "any judge, including the committing magistrate judge of the trial court having jurisdiction where the place, vehicle, or thing to be secured may be."  § 903.01, Fla. Stat.  The judge who issued the search warrant in this case, Judge James O. Shelfer, was a County Court Judge in in the Second Judicial Circuit, and therefore authorized to issue the warrant.  *See* Ex. KK at 404 (Def. Ex. 1 at 3).  The statute does not require that the issuing judge be a circuit judge or a "felony" judge as contended by Petitioner.  The warrant complied with the state law requirement.  Trial counsel testified at the evidentiary hearing that he was aware that Judge Shelfer was a County Judge and there were in place administrative orders authorizing county judges to issue warrants.  Ex. KK at 328.

The warrant also complied with the issuance requirements of the Fourth Amendment.  The Fourth Amendment has been held to require that the warrant be reviewed and issued by a "neutral and detached magistrate."  Johnson v. United States, 333 U.S. 10, 13-14 (1948).  This provision has been construed to mean one who is independent of police and prosecution.  *Id.*; *see also* Shadwick v. City of Tampa, 407 U.S. 345,

350 (1972).  The Supreme Court has acknowledged that a judge is one of those persons who could provide "the most desirable review of warrant requests."  *Id.* at 353.

The County Judge who issued the search warrant in this case was without dispute a neutral and detached person independent of the police and prosecution.  The post-conviction court found that the warrant was properly issued by a judge legally empowered to do so and for that reason defense counsel did not provide deficient representation in failing to challenge issuance of the warrant.  Because the post-conviction court's adjudication of this claim is not contrary to, or involving an unreasonable application of, clearly established Federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the record, habeas relief under 28 U.S.C. § 2254(d) should be denied as to Ground 2.

## Ground 3: Hearsay Testimony of Victim's Mother

Petitioner contends that trial counsel was ineffective in failing to file a motion in limine to prevent the victim's mother from testifying to hearsay. ECF No. 1 at 7.  He argues that the victim's mother was allowed to testify that the victim told her the Defendant "did this to me" and other matters pertaining to the alleged sexual assaults, and that this hearsay was used to

corroborate the victim's testimony.  ECF No. 1 at 8.  This claim was raised in the state post-conviction proceeding and Petitioner was provided an evidentiary hearing in which to present any evidence he deemed relevant on his claims.  In his post-conviction motion, Petitioner claimed that trial counsel should have filed a motion in limine to prevent the hearsay testimony and should have objected when it was elicited.  Ex. KK at 93.

The post-conviction court denied the claim, concluding that the victim's mother testified her husband initially found certain items in her daughter's room.  Ex. KK at 394.  The court concluded that objection to testimony that her husband initially found the items, which the victim's mother then personally viewed, would have been "absurd," and the decision not to object was a strategy decision not to make frivolous objections.  Ex. KK at 394.  The post-conviction court's findings are supported by the record.  The victim's mother testified that her daughter had been hired by a neighbor, whom she later identified as Petitioner, to help take care of his many dogs, and that she did so both when he was away and when he was home.  The victim's mother also testified in pertinent part about events occurring on or about May 9, 10, and 11, 2005, after she learned her daughter had sneaked out of her bedroom the night of

May 9.  The victim's mother explained that the next morning, some items were found in her daughter's room, as follows:

> Q (Prosecutor)  Let me ask you, did your husband ultimately show you some things he found in her [the victim's] room?
>
> A  He told me about them.
>
> Q  Told you about them?
>
> A  Uh-huh.
>
> Q  Okay.  And did you ever see the items?
>
> A  Yes, I did.
>
> Q  What were they?
>
> A  Vibrators.
>
> Q  When you saw them, where were they?
>
> A  They were in her top right dresser drawer.
>
> Q  Were you aware of her having these items before your husband showed them?
>
> A  No, sir.
>
> Q  Did it come as a surprise to you?
>
> A  Oh, yes.
>
> Q  Let me show you what has previously been marked for identification purposes as State's Exhibit 77.
>     . . . .
>
> Q  Without removing it from the bag, can you look in there and tell us if you recognize those items?
>
> A  Yes, sir, I do.
>
> Q  What are they?
>
> A  Vibrators and condoms.
>
> Q  Are those the things that were found in her drawer?
>
> A  Yes, sir.
>     . . . .

Q  After finding those items in State's 77, in your daughter's drawers, did you do anything in respect to her room?

A  I looked through her drawer further.

Q  Okay.  And let me show you what has been marked as State's Exhibit 76.

. . . .

Q  Without showing these to the jury, can you just take a look through them and see if you recognize those?

A  Yes, sir, I do.

Q  What are they?

A  They are pictures of my daughter with no clothes on.

Q  And are those the photos that you found in her drawer?

A  Yes, sir.

Q  Had you previously been aware that they existed?

A  No, sir.

Q  What did you do when you found them?

A  I took them and put them in my car and kept them until I picked her up from school.

Q  And when was that?

A  That was that Tuesday - - Wednesday afternoon at 4:30.

Q  Would that have been May 11th, 2005?

A  Yes; yes, sir.

. . . .

Q  Did you have a conversation with your daughter?

A  I did.

Q  Did you tell her you were upset?

A  I did.

Q  Did you ask her anything?

A  I asked her who - - where the pictures came from, and who she had been having sex with.

Q  Did she tell you?

A  She did.

Q  Now, who did you suspect that she had been having sex with?

A  The boyfriend she had at the time.

Q  When you found out who it was, were you shocked?

A  I was.

Q  What did you do?

A  I went home and had her tell her dad, and we called the sheriff's office.

Q  Did a deputy respond to your home?

A  Yes, sir.

Q  Uniformed deputy?

A  Yes, sir.

Q  Did a detective also come out?

A  He came within the next hour and a half.

Q  That would have been Detective Lombardo?

A  Yes, sir.

Q  Are those the only three pictures that you have seen - -

A  Yes, sir.

Q  - - in this case?

A  Yes, sir.

Q  The fellow that you have described as your neighbor, Richard Rightmire, do you see him here in this courtroom?

A  Yes, sir.

Q  Would you please point to him and describe something he is wearing?

A  He is sitting there with the blue shirt.

        MR. ALLMAN:  Your Honor, may the record reflect that the witness has identified the defendant?

        THE COURT:  The record so reflects.

        MR. ALLMAN:  I don't have anything further.

Ex. JJ at 44-48.  Therefore, the only hearsay elicited from this witness was the statement that her husband told her about some things he found in their daughter's drawer and that her daughter identified who was responsible, without stating what her daughter told her.  The post-conviction court found that this testimony was not objectionable hearsay and any objection would have been frivolous.  Trial counsel testified at the evidentiary hearing that the brief references by the victim's mother to her daughter having told her something "may have technically been hearsay. . . . [b]ut there was no need to object to it and be a jack-in-[the]-box in front of the jury."  Ex. KK at 329.  He also stated, "I don't think the State sought to elicit hearsay statements from the victim's mother.  I think it just started to kind of come out that was and it was curtailed pretty quickly.  Ex. KK at 329.  The court concluded that no ineffective assistance of counsel had been proven in failure to object to the testimony.  Ex. KK at 394.

        Respondent contends the denial of the claim was not appealed and is therefore unexhausted and procedurally defaulted.  ECF 11 at 20.  Although the claim was not the subject of a specific point on appeal to the

state district court of appeal, it was discussed in general terms in Petitioner's pro se brief.  *See* Ex. LL at 16-17.  Assuming the claim was properly exhausted in state court, the claim should be denied on the merits.

The victim's mother did not testify that her daughter identified Petitioner as the person who took the photographs and gave her the condoms and the vibrators.  There was no hearsay to object to in this regard.  Although the witness testified her husband told her he found some items in the victim's drawer, the witness did not testify to his identification of the items.  Further, the witness identified the items based on her own observation of them in the drawer and retrieval of them from the same drawer or drawers.  No deficient performance has been shown.  Even assuming counsel should have objected to some aspect of this witness's testimony, Petitioner has not shown that, absent any such error, there is a reasonable probability that the outcome of the trial would have been different, a reasonable probability being one sufficient to undermine confidence in the outcome.  <u>Strickland</u>, 466 U.S. at 694.

The victim in this case, J.O., testified that she began working for Petitioner taking care of his dogs when she was in 7th or 8th grade.  Ex. E at 57.  She testified that after working for him for a period of time, and when she was about age 15, Petitioner began to show her pornographic pictures

from the internet and have sexual conversations with her.  Ex. E at 61.  She

testified that when she was still under age 16, Petitioner engaged in sexual

acts with her, penetrating her vagina with his fingers and penis and foreign

objects.  Ex. E at 64.  She testified that when she was younger than age 16

he placed his mouth in union with her vagina.  Ex. E at 64.  The acts

occurred too many times to count.  Ex. E at 65.  She also testified that

Petitioner took photographs of her naked and with his penis in contact with

her.  Ex. E at 66.  She testified that she was in all 78 photographs on a

computer disk she was shown.  Ex. E at 67.  After her 16th birthday but

before May 6, 2005, she testified that the same type of sexual acts

continued.  Ex. E at 67-68.

J.O. identified some pictures she said Petitioner had taken of her

naked and then given to her so she could show them to her boyfriend or

have them when she was older to remember "how pretty [she] used to be."

Ex. E at 70.  She also identified the vibrators and condoms that her mother

and father found in her drawer as items that Petitioner had given her.  Ex. E

at 73.  She said Petitioner also provided her with alcoholic beverages to

celebrate her International Baccalaureate exam, and gave her some

Percoset medication when she had cramp pain.  Ex. E at 74.  She identified

Petitioner in court as the man she described in her testimony.  Ex. E at 75.

Petitioner's failure to prove the prejudice prong of <u>Strickland</u> renders Petitioner's ineffective assistance of counsel claim without merit.  In light of this evidence at trial, failure to object to the testimony of the victim's mother that her daughter identified the perpetrator, without naming him, and that her husband told her he found items in the victim's drawer, would not have created any reasonable probability that the jury would have found Petitioner not guilty.  Because the prejudice prong of <u>Strickland</u> cannot be met, trial counsel has not been shown to have been ineffective as alleged in Ground 3.  Petitioner has failed to show under 28 U.S.C. § 2254 that the denial of this claim by the post-conviction court was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For these reasons, habeas relief should be denied on Ground 3.

## Ground 4: Defense that Victim Lied to Conceal Conduct

In this ground, Petitioner contends that trial counsel rendered ineffective assistance by failing to present the "meritorious defense" that the victim falsely accused him in order to conceal her sexual conduct with her boyfriend.  ECF No. 1 at 8.  He contends that the victim was

promiscuous, and he and counsel were aware of her sexual involvement with a 19-year-old boyfriend.  Petitioner further argues that he attempted to have counsel present this defense to show the jury that the victim was lying to protect her boyfriend.  ECF No. 1 at 9.

At the evidentiary hearing, Petitioner testified but elected not to present any testimony on this issue.  See Ex. KK at 364.  Trial counsel testified that he did not present a defense that the victim was falsely accusing Petitioner in order to conceal her activity with her boyfriend because counsel would have lost all credibility before the jury; and he said he explained his reasoning for not presenting the defense to Petitioner before trial.  Ex. KK at 329.  Counsel also testified that it was a strategic decision not to pursue a defense that was not viable in light of the evidence.  Ex. KK at 331.  The post-conviction court denied the claim, stating on the record:

> Issue four, testimony about trying to lay the blame on the 19-year-old boyfriend, Mr. Morris made a strategy decision not to pursue that angle.  It would have truthfully probably been absurd, given the facts of the case.  It certainly was not ineffective assistance of counsel, nor was Mr. Rightmire prejudiced.

Ex. KK 394.

Respondent contends the post-conviction court was correct in light of the admissions Petitioner made in the recorded controlled telephone call

with the victim and evidence presented at trial of his possession of photographs of the victim engaging in sexual acts, which he admitted to having taken.  ECF No. 11 at 22.  Even though the defense was not presented, the victim was asked at trial by the prosecutor if she was lying to cover up her relationship with her boyfriend, to which she answered, "No." Ex. E at 92.  She also denied that the male shown in some of the photographs was her boyfriend, and responded affirmatively when asked if it was Petitioner.  Ex. E at 93.  Respondent also notes that Petitioner testified at trial, contrary to advice of counsel, and admitted having sexual intercourse with and performing other sexual acts on the minor.

The post-conviction court found that the decision not to present this defense sought by Petitioner was strategic, and the record reflects that trial counsel explored possible defenses.  Trial counsel testified at the evidentiary hearing concerning his preparation for trial as follows:

> I met with Mr. Rightmire, got his version of events, as I've kind of articulated, defenses of consent and things of that nature. Discussed maximum and minimum penalties with Mr. Rightmire.  Talked to him about the fact that consent was not a defense and not a good one.  Met with Mr. Rightmire's friends, who consulted with him and spoke with him, conducted depositions, as Mr. Rightmire has highlighted.  Came to your office, viewed the evidence.  I believe it was on like a sterile lap top or something, because you weren't at liberty to disseminate pornography.  You know, pretty much explored as many ins and outs of the case and see what we could do to come up with a defense.

Ex. KK at 324.  The Supreme Court has held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 466 U.S. at 690.  Counsel's testimony discloses a thorough investigation, and his resulting strategic decision that a defense that the victim was lying to protect a boyfriend was not a "plausible option" was reasonable.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.*; *see also* Knowles, 556 U.S. at 123 ("The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' ").

Based on the evidence presented at trial and the evidence presented at the evidentiary hearing, the post-conviction court's denial of this ineffective assistance of counsel claim was reasonable.  Petitioner has failed to demonstrate counsel provided deficient representation in this claim, and he has failed to meet the prejudice prong of Strickland.  He has not shown a reasonable probability—that is, one sufficient to undermine confidence in the outcome—that but for the error, if any, in failing to present this defense, the result of the trial would have been different.  For all these

reasons, Petitioner has not shown a basis for relief under 28 U.S.C. § 2254(d)—that the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the decision resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, Ground 4 should be denied.

## Ground 5:  Suppression of Taped Telephone Call

In this next claim, Petitioner contends that his trial counsel was ineffective in failing to move to suppress the recorded controlled telephone call between the victim and him.  ECF No. 1 at 9.  In support of this claim, he contends the call was made without a parent present, and that their presence was necessary to prevent coercion being applied to the minor to achieve the desired result.  He argues that even though there was testimony that the victim's father was present, this is insufficient because the father did not testify to enable the jury to judge the truthfulness of this testimony.  This claim was denied, and Petitioner appealed unsuccessfully to the state district court.  *See* Ex. LL at 20.  Thus, the claim is exhausted.

Respondent contends this claim is without merit, first, because Petitioner has no standing to assert the rights of the child victim.  ECF NO.

11 at 23.  Second, Respondent contends that the claim is factually

frivolous because the detective who participated in the call testified at the

evidentiary hearing that the parent gave permission and the parent was

present during the call.  Respondent cites the testimony of Detective

Lombardo elicited by Petitioner, who was acting pro se, at the evidentiary

hearing as follows:

> Q.  . . . Mr. Lombardo, you were the officer or the
> detective at the time in charge of the investigation of the
> incident that led to my arrest; correct?
>
> A.  Yes, sir.
>
> Q.  Okay.  You made contact with the victim at some
> point and went to make a controlled phone call?
>
> A.  Correct.
>
> Q.  And whose permission did you get to take that phone
> call from?
>
> A.  Her father.
>
> Q.  From her father?
>
> A.  Yes, sir.
>
> Q.  Was the father there at the time?
>
> A.  Yes, sir.
>
> . . .
>
> Q.  . . . .  So the father was there at that location; correct?
>
> A.  Correct.
>
> Q.  Did he listen in on the phone call?
>
> A.  From what we could hear, he could not hear what you
> were saying.
>
> Q.  So he wasn't actually party to the phone call?
>
> A.  No, sir.

> Q. Okay. There was only two parties to the phone call then, the young lady and myself; correct?
>
> A. And me.

Ex. KK 340-41. At trial, Detective Lombardo testified that the father was present during the controlled call, and the victim also testified at trial that she gave permission to record the controlled telephone call. Ex. E at 72. This testimony contradicts any suggestion by Petitioner that the minor was coerced into participating in the telephone call in order to achieve the results sought by the detective.

The post-conviction court denied this claim, stating:

> Issue five, failure to file a motion to suppress the controlled phone call. The transcript itself of the trial shows the testimony is that the father was present with his daughter when the controlled call was made. There is simply totally unproven that there was any basis to suppress the controlled phone call. Mr. Rightmire certainly had no standing to complain, even if the parents had changed their mind and for some reason were offended after the fact, which is not what we're dealing with. Totally unproven. There's been neither ineffective assistance of counsel shown, nor prejudice shown to the defendant.

Ex. KK 395. Because Petitioner presented no evidence to support his contention that the telephone call was made without permission or was the result of coercion, he has not provided any grounds to find that trial counsel was ineffective in failing to move to suppress. Petitioner has failed to demonstrate that the state court's adjudication resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court, or that the

decision resulted in an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  Under 28 U.S.C.

§ 2254(d), habeas relief may not be granted.

For all these reasons, Ground 5 should be denied.

### Ground 6:  Statement of Particulars

Petitioner contends in this claim that his attorney was ineffective in

failing to file a motion for a statement of particulars because, had he done

so, the time frame for the offenses could have been narrowed such that

Petitioner could have provided alibi witnesses.  ECF No. 1 at 10.  He also

contends that the statement of particulars would have given him a better

chance to defend against an overbroad information.

Respondent contends that the claim is unexhausted and procedurally

defaulted.  The claim was raised in Petitioner's post-conviction motion, Ex.

KK at 98-99, but denial of the claim was not appealed.  "Before a federal

court may grant habeas relief to a state prisoner, the prisoner must exhaust

his remedies in state court."  O'Sullivan, 526 U.S. at 842; 28 U.S.C.

§ 2254(b).  The federal claims must have been fairly presented in "each

appropriate state court."  *See* Baldwin, 541 U.S. at 29.  Because federal

habeas relief may not be granted for claims that have not been exhausted in state court, the claim is procedurally defaulted, and Petitioner has not demonstrated cause for and prejudice from the default.

Notwithstanding any default, the claim should be denied on the merits.  Petitioner suggests that if a statement of particulars had been obtained, he could have provided alibi witnesses because he was often away from his residence.  At the conclusion of the jury trial, while the jury was deliberating, the trial judge asked Petitioner if there were any alibi witnesses he requested his counsel to investigate and Petitioner responded, "Nobody that I know of."  Ex. E at 339.  At the evidentiary hearing on his post-conviction motion, he presented no evidence of any such witnesses or of any absences he had during the time frames that were indicated in the amended information and in the trial testimony.

Trial counsel testified at the evidentiary hearing that he was able to determine the pertinent time frames alleged in the information, stating:

> It was clear to me that window or time period the alleged conduct was said to have occurred to the [putative] victim in particular because she dated the conduct prior to her birthday and after her birthday.  So it left me and you [Petitioner] on notice of when the events were to have occurred.  And you have to bear in mind that a portion of your defense, as you testified and also as you told me, was a defense of consent that the victim consented to the sexual acts with you.

Ex. KK at 310-11.  The post-conviction court denied the claim, stating:

Issue six, failed to ask for a statement of particulars.  You know, it's truthfully absurd under the facts of this case.  There's been no ineffective assistance of counsel shown, nor any prejudice.

Ex. KK at 395.

The purpose of a statement of particulars is to give the defendant notice of the particular acts relied on by the state to establish the crime charged against him so that he may prepare a defense.  *See* Middleton v. State, 76 So. 785 (Fla. 1917).  Florida Rule of Criminal Procedure 3.140(n) provides a mechanism for counsel to obtain a statement of particulars if the time and date stated are too indefinite for counsel to prepare a defense.  Petitioner merely speculates that if more certain dates had been given, he could have presented an alibi defense, but no evidence has been provided to support that conclusory allegation.

Use of general time frames in charging unlawful sexual acts on a minor is not necessarily improper.  "[I]in the case of ongoing sexual abuse of a child, where the child is unable to remember the specific dates on which he or she was abused, the allegation that the act occurred 'on one or more occasions' is not, per se, duplicitous."  Geiser v. State, 83 So. 3d 834, 834 (Fla. 4th DCA 2011).  In Geiser, as in this case, the minors could not pinpoint specific dates when the acts occurred, although they could identify their ages when the acts occurred, and where they took place; and the

state separated the counts based on the ages of the victims at different points in time.  *Id.* at 836.  *See also* <u>Whittingham v. State</u>, 974 So. 2d 616, 618-19 (Fla. 4th DCA 2008) ("[T]he state may charge a defendant in child sexual abuse cases in a manner not permitted in other types of criminal cases, expanding time periods for the commission of offenses and grouping types of offenses together . . . .").

 Trial counsel testified at the evidentiary hearing that he did not file a motion for a statement of particulars, first, because he was aware of the latitude given to the State with respect to alleging dates of occurrence in cases alleging sexual conduct with juvenile victims.  Ex. KK at 331.  Second, he was on notice of the time frame alleged for the crimes charged, and that the victim was able to relate the time periods involved but not specific dates.  Ex. KK at 332.  Because charging offenses in the manner they were charged in this case does not necessarily lead to duplicitous convictions or deprive the defendant of a fair trial, and because trial counsel in this case testified that he had no difficulty determining the dates of the acts alleged in each count, Petitioner has not demonstrated that trial counsel was ineffective in failing to move for a statement of particulars to narrow the dates further.

The victim's testimony established that the abuse started when she was age 15, but she did not provide a specific date.  Ex. E at 63.  She described the sexual acts he performed on her before she turned age 16.  Ex. E at 65.  When asked if she could tell the court the exact dates the acts occurred, she responded, "No."  Ex. E at 65.  She described the time frame as beginning when she was ending 8th grade and starting 9th grade.  She also testified that similar sexual acts continued after she turned age 16 until May 6, 2005.  Ex. E at 67-68.  She was unable to tell the court exactly how many times these acts occurred after she turned age 16.  Ex. E at 69.

In Dell'Orfano v. State, 616 So. 2d 33 (Fla.1993), the Florida Supreme Court observed that the question of when a statement of particulars must be provided in child abuse cases, where the dates of the offenses are not specified in detail, implicates "two conflicting public policy concerns."  *Id.* at 35.  The first is the "strong interest in eliminating the sexual abuse of children through vigorous enforcement of child-abuse laws."  *Id.*  The second is defendant's "strong interest in being apprised of the charges against them such that they can prepare an adequate defense." *Id.*  In this case, the State had a substantial interest in enforcing the laws against sexual abuse of a minor, and trial counsel testified he was

sufficiently apprised of the time frames that he could adequately consider appropriate defenses.

Even if trial counsel had moved for a statement of particulars, it is apparent that the time frames or dates could not have been narrowed beyond what was charged in the amended information and testified to at trial.  For this reason, counsel has not been shown to have been ineffective under the test set forth in Strickland.  For all these reasons, Petitioner has not shown a basis for relief under 28 U.S.C. § 2254(d)—that the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Federal habeas relief should, therefore, be denied on Ground 6.

### Ground 7:  Failure to Convey Plea Offer

Petitioner contends that trial counsel was ineffective in failing to properly convey a plea offer made by the State.  ECF No. 1 at 11.  He argues that he was never told the State was willing to negotiate and was not informed of the possible consequences of being found guilty of the charges.  He contends that the State indicated a starting point of 20 years

in prison was "up for negotiation."  ECF No. 1 at 11.  He states, "After being

informed that there may be a plea open for negotiations, the Petitioner had

rejected negotiations because he was not informed of the amount of time

he could receive, and had not (sic) time to consider whether negotiations of

a possible twenty (20) year plea was in his best interest."  ECF No. 1 at 11.

Petitioner raised this claim in his amended post-conviction motion, Ex. KK

at 100, and he unsuccessfully appealed denial of relief on this claim to the

state appellate court.  Ex. LL at 21.  Therefore, the claim is properly

exhausted, as is required for federal habeas review.

On being questioned by Petitioner at the evidentiary hearing, trial

counsel testified concerning this claim as follows:

> Q. Did you provide me with a plea offer from the state,
> sir?
>
> A.  My recollection is that there was not a plea offer.  Mr.
> Allman and I had discussions about the case.  And as is routine
> in Mr. Allman's practice in particular in sex cases, Mr. Allman
> came to me and said - - or I went to him and said, you know,
> what can we do to resolve this?  Mr. Allman said, you know, if
> your guy is willing to do this, then you come back to me and I'll
> have a discussion with the victim and her family.  And we - -
> you and I never made it past go.
>
> And that's despite the fact that I tried to reason with you,
> your very good friend tried to reason with you, your friend's wife
> tried to reason with you.  And even on the morning of jury
> selection, I sat right there around that corner and tried to reason
> with you.  And you never would agree to have any discussions
> as it related to entering a plea of no contest.
>
> Q.  So there was no actual plea offer at all?

A.  To my recollection, Mr. Allman never conveyed a term of years that he was willing to agree to.  It was that, Mr. Morris, you can speak with your client.  If he's willing to do something, come and talk to me.  And that didn't occur, in the sense that you weren't willing to talk.

Q.  The only plea offer that you are aware of was the one that was offered by the judge then?

A.  Well, the judge isn't in the business of making plea offers.

. . . .

Q.  Do you recall the plea offer that was offered to me at the end of the trial?

A.  I don't have any recollection of any plea offer.  I know that Judge Dekker conducted an inquiry, kind of along the same lines. And I believe that the record will best reflect but I think that my testimony today is almost identical to the inquiry that Judge Dekker conducted.

Ex. KK at 311-12.  Trial counsel later testified on questioning by the State,

as follows:

Q. All right.  So can you categorically state then that there was never a 20-year plea offer in this case?

A. To my knowledge there wasn't.  There may have been some discussion that I had with Mr. Rightmire that if we can have a starting point there, then I might be able to go back to Mr. Allman.  I don't recall you saying, Mr. Morris, if your client will plead to twenty years, then that's what we'll do.

Q. All right.  And would you say that plea offers in your practice are one of those things that if the state had made you an offer, even if it was, you know, an unattractive one, you're professionally and ethically duty bound to relay that to your client?

A. Absolutely.  And I think that I even explored ideas right before trial with yourself of just entering an open plea, that way the Court didn't hear all of the facts that were associated with

the case.  And you, I think, had agreed potentially to dismiss some of the counts.  But again - - but I would most certainly convey an offer.  And there was - - I was trying to get Mr. Rightmire to engage in the process, but he did not.

Q. And along that line, what was Mr. Rightmire's position on a plea offer, or resolving the case short of trial?

A. He just never engaged in the process. It was always, no, this is consensual, I'm going to trial.  It was, you know, head long into the trial courtroom.

Ex. KK at 333-34.

Petitioner testified at the evidentiary hearing that trial counsel came by the jail and "said that Mr. Allman had made some reference as to a 20-year plea offer."  Ex. KK at 366.  Petitioner testified that trial counsel said he would get back to him but "[h]e never did get back to me about any plea offers.  He left me believing there was one for 20 years."  Ex. KK at 366.

As to Petitioner's conclusory allegation that he was never informed of the possible consequences of going to trial, his trial counsel testified as follows on examination by the State:

Q  Okay.  With regard to how much potential time in the Department of Corrections he was exposed to, you heard Mr. Rightmire's testimony, can you shed any light on that, what was the substance of the meetings between the two of you; I mean, was he informed?

A  I can't think of a single case that I've handled since I have been admitted that I have not conveyed the very simple math to a client of this is what the maximum penalty is.  If it's a second-degree felony, it's fifteen.  And I will add however many third degree felonies there are.  And it would have been a pretty astounding number at the top end.

Q  Given the 90 or so counts that Mr. Rightmire was facing?

A  Yes.

Q  Your memory is though that you would have just sat down with a sheet of paper or a calculator and specifically told him what the top number was?

A  Again, I can't recall a case that I've ever not provided a specific number.

Ex. KK at 381-82.  This testimony demonstrates that Petitioner was advised

of the possible sentence he could receive if he was tried and convicted.

The post-conviction court denied the claim that counsel was

ineffective in not properly conveying a plea offer to Petitioner, explaining

the ruling on the record of the hearing:

Claim seven, failure to convey a plea offer, I accept the testimony of Mr. Morris.  There was never a plea offer made. There were discussions, but it's - - you know, it might have been ineffective not trying to, you know, enter into discussions. But the discussions didn't result in a plea offer.  I accept his testimony on that.  I also accept his testimony and reject specifically defendant's testimony.  I accept Mr. Morris' testimony that the defendant said he was not interested in any plea offer.  So any further provision of any further pursuing that would have been fruitless.  I also accept his testimony that he tried to get Mr. Rightmire to be realistic and accept some type of plea.  His client chose to ignore his advice.

Frankly, that's supported even by Mr. Rightmire's testimony when he's talking about - - you know, talking about the prosecutor may have been willing to drop some counts and he wasn't paying much attention is the way I took his testimony.

Ex. KK at 395-96.

The post-conviction court made its findings in large part based on

credibility determinations.  Under § 2254(d), federal courts have "no license

to determine credibility of witnesses whose demeanor has been observed

by the state trial court, but not by them."  <u>Marshall</u>, 459 U.S. at 434.  The

Eleventh Circuit has explained:

> Under § 2254(d)(2), "a state-court factual determination is
> not unreasonable merely because the federal habeas court
> would have reached a different conclusion in the first instance."
> <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010).  Instead, AEDPA
> requires that we accord the state court substantial deference.
> "If reasonable minds reviewing the record might disagree about
> the finding in question," we must yield to the state court's
> factual determination.  <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2277
> (2015) (quotation marks omitted and alteration adopted).
> "AEDPA also requires federal habeas courts to presume the
> correctness of state courts' factual findings unless applicants
> rebut this presumption with 'clear and convincing evidence.' "
> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-74 (2007) (quoting 28
> U.S.C. § 2254(e)(1)).

<u>Nejad v. Attorney Gen., State of Georgia</u>, 830 F.3d 1280, 1289 (11th Cir.

2016).

State court factual determinations are presumed correct and

Petitioner has the burden under 28 U.S.C. § 2254(e)(1) of rebutting the

presumption of correctness by "clear and convincing" evidence.  *See* <u>Davis</u>

<u>v. Ayala</u>, 135 S. Ct. 2187, 2199-2200 (2015).  Whether a defendant

received ineffective assistance of counsel is a mixed question of law and

fact, and deference to the presumption of correctness requires a federal

habeas court to do more than simply disagree with the state court before rejecting its factual determinations.  Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011).  "Instead, it must conclude that the state court's findings lacked even fair support in the record."  *Id.* (quoting Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (quoting Marshall v. Lonberger, 459 U.S. 422, 432 (1983))).

Petitioner's testimony established, at most, that he was left with the impression that there had been a possible plea offer of 20 years.  Even assuming that to be true, he did not testify that upon hearing of such a possible offer, he instructed his counsel to pursue it and agree to it.  Further, trial counsel testified that he did not recall a firm plea offer, but received only an invitation to present a plea offer to the prosecutor, but Petitioner was not interested in doing so because he believed himself innocent.

It is noteworthy that at the conclusion of Petitioner's jury trial, while the jury was deliberating, the trial judge questioned counsel and Petitioner about any plea offers during what she referred to as a "3.850 colloquy."  Ex. E at 334.  The following transpired:

> THE COURT:  Let the record reflect that defense counsel is present along with the defendant, the State is here, and the jury is out deliberating and the trial is completed.  This is what I call the 3.850 colloquy.  The sole purpose is to make sure that

there has not been any mistakes or errors that - - or misunderstandings that we haven't aired. And if I need to make rulings on or statements about, then we can do it.

First of all, were there any plea offers made in this case?

MR. MORRIS (Defense counsel): Yes. Well there wasn't really a plea offer, judge. Mr. Campbell had advised me that he would be willing to entertain an offer from the defense of 20 years or greater, and if I were - - if Mr. Rightmire were of the mind-set to accept something like that, I should come back to him and convey it. We never made it anywhere with that.

THE COURT: There was no offer. Okay. Mr. Rightmire, is that representation consistent with your information? Did anybody discuss that with you?

Let me put it another way. Given the charges in the case, and now we've actually had the trial, I mean, would you have wanted to take 20 years or make an offer of 20 years coming from your side?

THE DEFENDANT: No, I wouldn't have.

THE COURT: So, regardless of whether it was communicated to you by your other attorney or discussed at length, the point is it doesn't matter and you wouldn't have taken it. Is that a fair - -

THE DEFENDANT: Correct.

THE COURT: And would you have made that decision understanding that the maximum possible - - I mean, even if half the counts were thrown out, if you ran them all consecutive, as a practical matter, it could run for the rest of your life.

THE DEFENDANT: Anything over five years would probably be the rest of my life, Your Honor.

Ex. E at 334-35. Therefore, the trial record reflects that there had been no

plea offer from the State and that, even if a possible sentence of 20 years

had been presented, Petitioner would have rejected it.

Trial counsel, "as a general rule, has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). *See also* ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(a) (3d. ed. 1999). The post-conviction court found, however, that trial counsel's testimony was more credible than Petitioner's—a determination that is entitled to deference—that a plea offer of 20 years was not made. For that reason, Petitioner failed to establish that trial counsel rendered ineffective assistance in failing to convey such an offer. As discussed earlier, where the state court's determination is challenged on a factual basis, the federal court may overturn the decision only if it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, 134 S. Ct. at 15 (quoting Wood, 558 U.S. at 301). Petitioner has also failed to show that but for the error, if any, of counsel failing to convey a plea, he would have accepted a plea calling for a sentence of 20 years. The colloquy that occurred after the jury retired to

Case 4:14-cv-00103-RH-CAS   Document 17   Filed 11/15/16   Page 52 of 92

Page **52** of **92**

deliberate demonstrates that no prejudice flowed from any failure of counsel.

The factual determinations of the state court are presumed correct and Petitioner has not rebutted them by clear and convincing evidence. Therefore, the state court's adjudication that trial counsel was not ineffective did not result in a decision that is contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor has the adjudication resulted in a decision that is an unreasonable determination in light of the evidence presented in the state court proceeding.

For these reasons, habeas relief should be denied on Ground 7.

### Ground 8: Vindictive Sentencing

Petitioner claims that his trial attorney was ineffective in failing to object to his "vindictive sentence."  ECF No. 1 at 12.  He contends that the trial court imposed a vindictive sentence after Petitioner did not accept a potential plea offer of "around twenty years" and was found guilty by the jury.  ECF No. 1 at 12.  He bases this contention on the fact that at the conclusion of trial, after the jury was sent to deliberate, a discussion of whether there had been a plea offer ensued.  Petitioner contends that this colloquy shows that the sentence he received of 65 years after the jury

found him guilty was vindictive, as punishment for rejecting that possible plea offer.

Respondent correctly contends that the claim is unexhausted and therefore procedurally defaulted because it was not raised on appeal from denial of his post-conviction motion.  ECF No. 11 at 31.  Thus, Petitioner did not properly exhaust this claim in state court and it is now procedurally defaulted and should not be considered unless he can show cause for and prejudice from the default.

Regardless of any default, the claim should be denied on the merits. The evidence presented at the evidentiary hearing, and the record of the 3.850 colloquy at the conclusion of the jury trial, show that the trial judge fully explained the maximum possible sentence of more than 60 years that would be indicated under the sentencing scoresheet unless there was a reason for the court to impose a downward departure.  Ex. E at 336.  At the conclusion of trial, the judge informed Petitioner that if he is convicted, the points on the scoresheet add up to a "large minimum" unless there is a statutory reason to deviate downward, and that the total would be "60 years, plus."  Ex. E at 336.

At the sentencing hearing, where Petitioner was proceeding pro se, the court offered to appoint counsel for him, but he responded only that he

"wouldn't mind having Mr. Morris assist me." Ex. G at 3.  The court asked

Mr. Morris to assist and noted to counsel, "You realize you may be at a

disadvantage, you may not even have the file because this didn't come up

again until this morning."  Ex. G at 4. The judge then addressed Petitioner,

stating, "You realize he is just going to do the best he can, handicapped as

he may be by your earlier decision."  Ex. G at 4.

The sentencing hearing proceeded and counsel presented argument

to the court why a downward departure might be in order.  The State

argued that there was insufficient basis in the record for the court to give a

downward departure.  Ex. G at 13.  Prior to imposing sentence the trial

judge stated:

> THE COURT:  All right.  Mr. Rightmire, I sat through this
> trial and listened very carefully to everything.  I respect your
> right to take anything to trial.  I do that with any defendant.  But
> during the course of the trial, I heard the details of how this
> unfolded.  And there is no question that I agree with the State's
> characterization that you groomed this young child to become a
> victim.

Ex. G at 16.  The sentencing court did not find any basis on which to

impose a downward departure.

The fact that the trial judge imposed a sentence, even if it appears to

be a harsh one, in accord with the sentencing scoresheet, is not evidence

of vindictive sentencing.  *See, e.g.*, Wilson v. State, 845 So. 2d 142, 149

(Fla. 2003) (discussing vindictiveness of sentencing after rejection of a plea offer).  A presumption of vindictiveness does not apply unless there is a realistic likelihood of vindictiveness.  *Id.* at 148.  Even where a presumption of vindictiveness arises, it may be overcome by "objective information in the record" justifying the harsher sentence.  *Id.* (quoting United States v. Goodwin, 457 U.S. 368, 374 (1982)).  First, there was no evidence of a plea offer that was rejected, and second, the sentencing judge in Petitioner's case stated her reasons on the record concerning the evidence heard at trial as her reason for imposing the sentence in line with the scoresheet and not granting a downward departure.

The post-conviction court found that counsel had no reason to object to the sentence as vindictive, and thus was not deficient in this regard, stating:

> Issue seven, vindictive sentence imposed by the trial court, Mr. Rightmire has construed the comments by Judge Dekker to be her entering into the plea process.  I do not find that to be the case of what was happening.  If you look in the context of it, Judge Dekker, at the end of the trial, was trying to make sure that there weren't any ineffective assistance of counsel claims or any unresolved issues still standing out there.
>
> Frankly, the defendant even then said he had no interest in a plea bargain.  But I do not construe that Judge Dekker was entering into the plea process.  She was trying to see if there was some plea offer that was out there that had not been properly conveyed.  There was nothing vindictive about her sentence.  She never suggested a sentence.  She never

> suggested what would be proper in the way of a sentence.  And the truth is, this is after court so - - I mean after the trial was concluded.  The theory of the vindictive sentence cases are that a judge is trying to coerce a defendant in to not going to trial by the offer of a plea.  And then when the defendant does go to trial, punishing the defendant for going to trial.  That's not the situation we have here.  This is all while the jury is deliberating, the trial has already been concluded.
>
> So I do not find that Mr. Morris was ineffective for failing to object to that, nor do I find that there was a vindictive sentence by the Court.

Ex. KK at 396-97.

Because this claim, even if heard on the merits, provides no basis for federal habeas relief, it should be denied.  Petitioner has failed to show that the state's court's adjudication resulted in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence in the record.

For all these reasons, Ground 8 should be denied.

## Ground 9:  Failure to Object to Illegal Sentence

Petitioner contends that trial counsel was ineffective in failing to object to the illegal sentence imposed by the trial court.  ECF No. 1 at 13. He argues that Counts 2 through 76 were one single episode and being found guilty of all of them constitutes double jeopardy, even though the trial

court withheld conviction and sentencing on Counts 3 through 76.

Respondent contends that this claim is not cognizable in this habeas

proceeding because Petitioner is not in custody on those counts.  ECF No.

11 at 33.

A federal habeas petitioner must be " 'in custody' under the conviction

or sentence under attack at the time his petition is filed."  Diaz v. State of

Florida Fourth Judicial Circuit ex. rel. Duval County, 683 F.3d 1261, 1264

(11th Cir. 2012) (citing Maleng v. Cook, 490 U.S. 488, 490-91 (1989)).

Although the "in custody" requirement has been liberally construed, it has

not been extended to a scenario where the defendant suffers no present

restraint from the conviction being challenged.  Diaz, 683 S.3d at 1264.

Because Petitioner concedes he was not convicted of Counts 3 through 76

and was not sentenced on those counts, he was not "in custody" under

conviction or sentence arising from those counts.

Petitioner was found guilty by the jury of Counts 2 through 76, all of

which alleged possession with intent to promote child pornography in

violation of 827.071(4), Florida Statutes, and were based on the

photographs found on Petitioner's computer.  The trial court concluded that

it could not adjudicate Petitioner guilty on all the counts and thus convicted

and sentenced him only for Count 2.  Ex. G at 16-17.  Trial counsel argued

at sentencing, as he did in the motion for judgment of acquittal during trial, Ex. E at 218-25, that the verdicts on Counts 3 through 76 should be vacated.  Ex. G at 5.  The trial judge, however, held that the law prevents an adjudication of guilt on those counts, but does not require the verdicts to be vacated.  Ex. E at 220; Ex. G. at 16.  The trial court's refusal to vacate the verdicts on Counts 3 through 76 was raised in Petitioner's direct appeal, which the First District Court of Appeal affirmed per curiam without explanation, which constitutes a ruling on the merits.  Ex. H, J.[4]

In Petitioner's amended motion for post-conviction relief, he contended that trial counsel was ineffective for failing to object to the alleged illegal sentence.  Ex. KK at 104-05.  The denial of this claim was not raised on appeal from the post-conviction proceedings, and thus the claim of ineffectiveness is unexhausted and procedurally defaulted.

Regardless of the default, and regardless of the fact that Petitioner is not in custody on any conviction or sentence arising from the jury's verdicts on Counts 3 through 76, the claim lacks merit.  Petitioner's trial counsel did object to the fact that the jury's verdicts were allowed to stand even though

---

[4] Whether the trial court or the appellate court were correct in refusing to strike the verdicts in Counts 3 through 76 is not the issue before this Court.  Petitioner's claims in this ground are that trial counsel was ineffective in failing to object to an illegal sentence.

not adjudicated or sentenced.  The issue was raised both during trial and

during sentencing.  The post-conviction court denied the claim, stating:

> Issue nine, failure to object to an illegal sentence, I mean,
> it's - - Mr. Morris did everything he could to get the judge to, in
> terms of a double jeopardy argument, I mean it's essentially the
> same argument that's otherwise made.  And the judge
> ultimately chose not to sentence on those counts that she felt
> may be subject to double jeopardy.
>     . . . . Certainly, Mr. Morris wasn't ineffective.  He did what
> he could to raise this double jeopardy claim.  There has been
> neither ineffective assistance of counsel or prejudice shown.

Ex. KK at 397-98.  Because trial counsel did raise the issue of the validity

of letting stand the jury's verdicts on Counts 3 through 76, the claim that

trial counsel was deficient was not proven.  Further, prejudice from the

alleged error of counsel cannot be shown because the sentencing court

stated that if Counts 3 through 76 were reinstated on appeal, "I would run

those all concurrent to each other and still give him 15 years consecutive.

So whether it is one count or all of those counts doesn't change anything."

Ex. G at 21.  Moreover, if the appellate court had directed the trial court to

vacate the jury verdicts in Counts 3 through 76, the sentence for Count 2

would remain the same.  There would be no change in the number of

convictions Petitioner received on Counts 2 through 76 and no change in

the sentence.  Petitioner has failed to show that there is a reasonable

probability that, but for trial counsel's alleged error, the result of the proceeding would have been different.

This claim, even if properly raised in a federal habeas proceeding and even if heard on the merits, provides no basis for relief and should be denied.  Petitioner has failed to show that the state's court's adjudication resulted in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence in the record.

For all these reasons, Ground 9 should be denied.

### Ground 10:  Advice Regarding Right to Testify

In this claim, Petitioner contends that his attorney was ineffective in failing to properly advise him regarding his right to testify and failing to gain his confidence in the defense presented.  ECF No. 1 at 14.  Although he couches the claim in terms of failure to properly advise, he explains that because of his counsel's "do nothing" strategy, Petitioner was compelled to testify because his counsel became "irate" with him for pursuing his innocence.  ECF No. 1 at 14.  This claim was raised in the amended post-conviction motion, where it was described as a "cumulative" claim of ineffectiveness that caused him to testify in his own behalf.  Ex. KK at 106.

The claim was appealed to the district court of appeal, where it was denied on the merits by a decision affirming per curiam without opinion.  Ex. LL at 22; Ex. OO.  The Respondent contends that the claim is meritless because Petitioner concedes that he fully understood it was his decision whether to testify, but still argues that counsel should be held at fault for the decision.  ECF No. 11 at 34-35.

In his post-conviction motion, Petitioner alleged that counsel did not defend him vigorously because, he alleges, counsel thought Petitioner was wasting everyone's time making them go to trial and that Petitioner was a "child molester and deserving of everything that came to him."  Petitioner contended that counsel was "throwing" the case.  Ex. KK at 106.  At trial, when Petitioner complained to the trial judge that his counsel was not representing him properly and that counsel had personal feelings causing him to believe Petitioner was not "worth defending," counsel denied telling Petitioner he was not worth defending.  Ex. E at 6, 8-9.  Counsel explained to the trial judge that any personal opinions he had expressed to Petitioner about requiring the 17-year-old victim to testify did not prevent him from defending Petitioner and was based only on what he saw as the strength of the State's case.  Ex. E at 9.  He cited as an example the photograph of Petitioner's penis penetrating the victim's mouth, and described it as "pretty

overwhelming."  Ex. E at 10.  Counsel explained at trial that his comments to Petitioner were aimed at making him aware of the likelihood of the jury finding him guilty.  The trial judge found that "there is nothing incompetent about that role," stating:

> **THE COURT:**  . . . . Cases are - - you know, defense lawyers don't make the cases.  The state makes the cases. And cases are weak, cases are strong, cases are overwhelmingly strong and some cases are overwhelmingly weak.  And every defense attorney will have an opinion about what that is.  That is not a personal judgment.  What it is is their job professionally is to tell you what they think and why, and to give you an expression of what they think other people may look at.  So that you can help decide what strategies you want to employ.  The decision on that is totally up to you.  But that's what they're paid to do, or in your case he is appointed.  But he is being paid by the State of Florida to do exactly that.
>
> So I find that there is no incompetent representation.

Ex. E at 10-11.  To the extent Petitioner makes the specific claim that trial counsel was irate with him for pursuing his claim of innocence, this colloquy at trial demonstrates that counsel's opinions about the case and evidence did not force Petitioner to testify, and that the decision was Petitioner's alone to make.

Moreover, at the conclusion of the State's case, before he testified at trial, the trial judge engaged in the following colloquy with Petitioner concerning his decision whether to testify:

**THE COURT:** Mr. Rightmire, you can discuss in private with your attorney whatever choices you have, but you need to understand that you do have the right to testify.  There will only be one opportunity to do that.  Once the defense closes its case, it is done and over with.

If you testify, the state has the right to cross-examine you.  They will have the right to ask you how many prior felony convictions you have or crimes involving dishonesty.  If the answer is zero, that's fine.  Or they may not even discuss it if they know the answer is zero.  But if you have any of those convictions, then you would have to give the correct number.  They could not get into the history of those particular convictions.

Do you understand that concept?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:**  Do you understand if you don't testify, the jury will be instructed that they cannot hold that against you.  It is my firm belief that they honor that.  I've seen juries many times and the burden of proof is on the State and they are very carefully instructed about that.  So if you do not testify, they will be read that instruction.

The decision to testify or not, your attorney will give you what he thinks is good advice.  It is only advice based on experience.  It may not be perfect advice.  He may be wrong.  He doesn't have a crystal ball, nobody does.  Nobody knows how it is all going to turn out.

So the bottom line is the decision to actually get on that stand in the last analysis is yours and yours alone to make.  Your attorney, let's assume, has an opinion that it would be terrible for you to testify, do not testify, I strongly - - he cannot make you not testify.  And if you decide to testify, he is a professional, he will question you and assist you to the best of his ethical ability. And that's what lawyers do all the time.

If you want to remain silent and he wants you to testify, it is still your decision.  He can't make you do anything.  And he will, again, argue and do the best he can based on the evidence as it exists.

Do you understand those concepts?

**THE DEFENDANT:** Yes, ma'am.

THE COURT:  Okay.  Unless you tell me otherwise,
whatever announcements your attorney makes; such as, you
know, calling you to the stand or not calling you to the stand or
calling somebody else to the stand, I am going to assume is
with your consent and strategy and permission.  Because if it is
not, if you're having a big conflict with him, you need to raise
your hand and get my attention and I will send the jury out and
we will have a discussion about the problem.

Do you understand that concept?

**THE DEFENDANT:** Yes, Your Honor.

….

**MR. MORRIS:**  Judge, I think we have had an opportunity
to hold prayer, so to speak.  And I will put on the record, despite
the advice of counsel, Mr. Rightmire's elected to testify in the
case.

Ex. E at 235-39.  Petitioner did testify at trial over advice of counsel and in

doing so, he admitted performing sexual acts on J.O. both before and after

she was age 16.  Ex. E at 278.

Other than the complaints discussed above, Petitioner fails to identify

any specific actions, or inactions, of counsel that he contends were

deficient and forced him to testify in his own defense.  Instead, Petitioner

contends in a conclusory manner that the "cumulative nature" of counsel's

ineffective representation forced him to testify even though he knew it was

not in his best interest to do so.  To the extent the claim is based on a claim

of cumulative error, it lacks merit.  Although the Supreme Court has not

directly addressed the cumulative error doctrine in the context of an ineffective assistance of counsel claim, it has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (quoting United States v. Cronic, 466 U.S. 648, 659 (1984)).

At the post-conviction evidentiary hearing, trial counsel testified that he discussed the decision whether to testify with Petitioner and advised him not to testify because it was going to be a "calamity." Ex. KK at 336-37. The post-conviction court denied the claim of ineffectiveness, finding that counsel advised Petitioner not to testify and that Petitioner "chose to ignore his advice." Ex. KK at 398. The court rejected Petitioner's contention that trial counsel "did such an awful job that he was free to ignore his advice," and that Petitioner was free to ignore it, but "at his peril." Ex. KK at 398. Because this claim is based on conclusory allegations that fail to identify any specific acts of counsel that have been shown to be deficient, the post-conviction court's adjudication of the claim, finding that ineffectiveness of counsel has not been shown, does not result in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or one that is based on

an unreasonable determination of the facts in light of the evidence in the
record.

For all these reasons, Ground 10 should be denied.

### Ground 11:  Failure to Preserve Objection to Word "Audience"

In this claim, Petitioner contends that trial counsel was ineffective in
failing to "properly" preserve for appeal any objection to the use of the word
"audience" in the jury instructions without further definition, which he
contends caused confusion on the part of the jury.  ECF No. 1 at 15.  He
argues that this failure "showed an ineffective assistance of counsel,
considering the cumulative effect of errors of which this joins."  He further
states, "The court's direction to counsel to leave the issue to appellate
review should have brought further objection which counsel failed to do."
ECF No. 1 at 15.

Respondent contends that the claim is unexhausted and procedurally
defaulted because it was not raised on appeal from denial of post-
conviction relief.  ECF No. 11 at 36.  The claim was denied by the post-
conviction court with the finding that "nothing was shown here that Mr.
Morris was ineffective."  Ex. KK at 398.  Denial of the post-conviction claim,
however, was not appealed to the state First District Court of Appeal.  *See*
Ex. LL.  As discussed above, to obtain habeas relief in federal court, the

federal claims must have been fairly presented in "each appropriate state court."  *See* Baldwin, 541 U.S. at 29.  All claims for which an appellant has not presented any argument are waived on appeal.  Doorbal, 983 So. 2d at 482-83.  Because this claim of ineffective assistance was not exhausted in the state courts, it is procedurally defaulted, and Petitioner has not shown any cause for and prejudice from the default.

Notwithstanding any default, the claim should be denied on the merits.  Failure to preserve a claim for appellate review has been held not to demonstrate prejudice, which is required under the second prong of Strickland's test for ineffective assistance of counsel.  *See* Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006).  Strickland requires the post-conviction movant show there is a "reasonable probability that, absent the errors, the factfinder would have had reasonable doubt respecting guilt."  *See* Strickland, 466 U.S. at 695; Purvis, 451 F.3d at 738.  Petitioner cannot show that even if counsel had more forcefully, or more frequently, objected to the use of the word "audience" to preserve the objection for appellate review, the jury would have had a reasonable doubt respecting his guilt.

Even if considered on the merits, the claim should be denied. Petitioner was charged in Count 1 with promoting a sexual performance by

J.O., a child less than 18 years of age, in violation of section 827.071(1)-

(3), Florida Statutes (2005).  That statute provided in pertinent part:

> (1)(c) "Performance" means any play, motion picture, photograph, or dance or any other visual representation exhibited before an audience.

§ 827.071(1)(c), Fla. Stat.  Trial counsel moved for a judgment of acquittal

as to Count 1, arguing that there was no evidence that there was any type

of performance or presentation before an audience.  Ex. E at 216-17.

Counsel also argued, and the prosecutor agreed, that case law does not

define the word "audience," although trial counsel contended it should be

construed to require showing the photographs to more than one person.

Ex. E at 218. The prosecutor responded that the photographs were shown

to the victim and were viewed by Petitioner, who constituted an audience.

Ex. E at 217.

The trial court stated, "I'm going to let it go to the jury.  I'm going to let

it be an appellate issue.  It is a legal argument."  Ex. E at 218.  The jury

was instructed as to the elements of the offense according to the statutory

elements, including the instruction that "performance" means "any play,

motion picture, photograph, or dance or other visual representation

exhibited before an audience."  Ex. E at 320.  After the jury retired to

deliberate, the jury sent back a question asking "what constitutes an

audience." Ex. E at 347. The jury was instructed, with agreement of counsel, that "[a]udience has no legal definition. Therefore, you should use your ordinary, everyday, common understanding of this word." Ex. E at 349. Petitioner contends that some further objection to the use of the statutory term "audience" in the jury instruction should have been made in order to preserve the issue for appellate review.

The record shows that trial counsel did object to use of the word "audience" without definition, and the claim of error based on use of that word was appealed to the state appellate court on direct appeal. On direct appeal, Petitioner argued that the trial court erred in not granting the motion for judgment of acquittal that was based on argument that the word "audience" was inadequately defined and was vague. Ex. H at 9. The post-conviction court was correct in concluding that trial counsel was not ineffective in failing to properly preserve the issue of the alleged ambiguity in the statutory term "audience."

Even assuming that Petitioner can base this habeas claim on failure to preserve an objection for appellate review, and even assuming his counsel's inaction caused an inability to appeal the claim that use of the word without definition was prejudicial error, such an appellate claim would not likely have resulted in a new trial or other relief for Petitioner. "Florida

courts have uniformly construed section 827.071 to permit a conviction even where the video tape [or photograph] of the child's engagement in sexual conduct is not shown to third persons."  Bishop v. State, 46 So. 3d 75, 79 (Fla. 5th DCA 2010) (bracketed material added) (citing Ladd v. State, 715 So. 2d 1012 (Fla. 1st DCA 1998) (holding that the making of motion picture or video tape that involves sexual conduct by a child less than eighteen years of age is in and of itself sufficient to constitute performance)).  "An 'audience' can consist of a single individual and that individual can be the defendant."  Bishop, 46 So. 3d at 79.

For all these reasons, Petitioner has failed to meet the requirements of 28 U.S.C. § 2254 that for relief to be granted, the adjudication of his post-conviction claim must have resulted in a decision that is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Habeas relief should be denied on Ground 11.

## Ground 12:  Double Jeopardy and Multiple Photographs

Petitioner contends in his twelfth claim that counsel was ineffective for failing to renew his objection regarding Counts 3 through 76 and

"strongly relitigate" the issue of double jeopardy arising from the State's prosecution of multiple photographs, which counsel argued in the motion for judgment of acquittal.  ECF No. 1 at 15.  These are the same counts and same photographs discussed above in Ground 9.

At trial, Petitioner's counsel argued during the motion for judgment of acquittal that allowing the prosecution to go forward on Counts 2 through 76 resulted in prosecution of "duplicitous" acts where there are multiple pictures.  Ex. E at 219.  The trial court interpreted this argument as one implicating "double jeopardy and units of prosecution."  Ex. E at 220.  The trial court ruled that the charges could go to the jury and if Petitioner is convicted, "anybody can appeal what those actual convictions were on the facts, and I can make - - in other words, there has been no, there is no double jeopardy violations until I adjudicate him guilty inappropriately of multiple counts meant to be in the statute only as one conviction."  Ex. E at 220.

After Petitioner was found guilty by the jury of Counts 2 through 76, the trial court adjudicated him guilty only of Count 2 and did not adjudicate him on Counts 3 through 76 or impose any sentence on those counts.  Ex. G at 16-17.  Trial counsel argued again at sentencing, as he did in the motion for judgment of acquittal during trial, Ex. E at 218-25, that the

verdicts on Counts 3 through 76 should be vacated.  Ex. G at 5.  The trial judge, however, held that the law prevents an adjudication of guilt on those counts, but does not require the verdicts to be vacated.  Ex. E at 220; Ex. G. at 16.  In line with that holding, the trial court did not adjudicate Petitioner guilty of those counts, and the court did not sentence him on those counts.  A claim alleging trial court error based on the court's refusal to vacate the verdicts for Counts 3 through 76 was raised on direct appeal. Ex. H at 14-15.

Respondent contends the post-conviction claim of ineffective assistance of counsel is unexhausted and procedurally defaulted because his claim presented to the state post-conviction court and in the appellate court did not allege ineffective assistance for failing to properly raise a claim of double jeopardy.  ECF No. 11 at 39.  Petitioner did raise this claim in his amended post-conviction motion, stating that "any reasonable (sic) effective attorney would have relitigated his arguments on the double jeopardy violations that occurred once the Court's conditions for further argument were met."  Ex. KK at 109.  He did not raise the postconviction claim in his appeal to the state First District Court of Appeal.  *See* Ex. LL. For this reason, the claim is unexhausted and procedurally defaulted.

Further, as discussed in Ground 9 above, this claim is not properly raised in a federal habeas proceeding.  A federal habeas petitioner must be " 'in custody' under the conviction or sentence under attack at the time his petition is filed."  Diaz, 683 F.3d at 1264 (citing Maleng, 490 U.S. at 490-91).  Because Petitioner was not convicted of Counts 3 through 76 and was not sentenced on those counts, he was not "in custody" under conviction or sentence arising from those counts.  For this reason alone, habeas relief should be denied.  Regardless of these bases for denial of habeas relief, the claim should be denied on the merits.

The post-conviction court denied the claim of ineffective assistance of counsel, referring to it as having been abandoned by Petitioner.  Ex. KK at 399.  The court found that trial counsel did preserve the issue and that it could have been brought on direct appeal.  Ex. KK at 399.  The post-conviction court's findings are entitled to deference.  As discussed earlier, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

The record reflects that trial counsel raised and argued a double jeopardy claim at several points in the trial, thus sufficiently preserving it for appellate review, as the post-conviction court found.  Petitioner has failed to show that his counsel rendered deficient performance regarding Counts 3 through 76, and has failed to show that any prejudice flowed from that alleged error.  His trial counsel, by his argument, convinced the trial court not to adjudicate Petitioner on those counts and not to sentence petitioner on those counts.  For these reasons, Petitioner has failed to establish under 28 U.S.C. § 2254 that the post-conviction court's adjudication resulted in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Habeas relief should be denied on Ground 12.

### Ground 13:  Error in Denying Motion for Judgment of Acquittal

Petitioner contends in this claim that the trial court erred in denying his motion for judgment of acquittal as to Counts 2 through 76 because the word "audience," which is used in the statute, was ambiguous.  ECF No. 1 at 16.  Respondent contends that the claim actually alleges jury instruction

error and does not qualify for the limited federal review that is available for

judgment of acquittal claims.  Respondent also argues that this is purely a

question of state law which is not cognizable in federal habeas review, and

that couching such claims in equal protection and due process terms does

not make such a claim cognizable.  ECF No. 11 at 40-41.

This claim was raised in Petitioner's direct appeal from his

convictions and sentences and no error was found by the state district court

of appeal, which affirmed per curiam without opinion.  Ex. H, J; <u>Rightmire v.</u>

<u>State</u>, 987 So. 2d 83 (Fla. 1st DCA 2008).  This ruling constitutes a

decision on the merits.  Ex. J; <u>Harrington</u>, 562 U.S. at 86 ("When a federal

claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to

the contrary."); *see also* <u>Wright v. Sec'y for the Dep't of Corrections</u>, 278

F.3d 1245, 1254 (11th Cir. 2002).

"It is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67;

<u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1054-55 (11th Cir. 1983).  A claim

grounded on issues of state law provides no basis for federal habeas relief

because a violation of a state statute or rule of procedure is not, in itself, a

violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 120-21 (1982); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).  This limitation on federal habeas review applies even if a petition involving only state law issues is "couched" in terms of alleged constitutional violations. *Id.* at 1508.

Petitioner's claim is predicated upon a claim of ambiguity in what the Florida Legislature intended to require when it used the term "audience" in section 827.071(4), Florida Statutes.  He argues that the trial court's instruction to the jury to use their everyday understanding of the word was "contrary to the legislature's intent."  ECF No. 1 at 16.  This is purely a state law issue and "[q]uestions of state law rarely raise issues of federal constitutional significance, because 'a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved'."  Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting Carrizales, 699 F.2d at 1053-54).  Even if state law error occurred, the Eleventh Circuit has made clear that federal habeas relief will only be granted for state law errors that were so critical they rendered the entire trial fundamentally unfair in violation of the right to due process. *Id.*; Branan, 861 F.2d at 1508.

Whether the trial court correctly instructed the jury to use their everyday understanding of the word "audience" in applying the statutory language, where that word is alleged to be ambiguous, is purely one of state law, and Petitioner fails to allege any constitutional violation in his petition in this court. Even assuming he is contending, as he did in his direct appeal of this issue in state court, that the failure to define the term "audience" rendered it violative of due process, he has failed to provide any basis on which this Court could grant habeas relief. First, he has not shown how the error, if any, was so critical that it rendered the entire trial fundamentally unfair. As noted earlier, Florida courts have construed section 827.071 as intended to permit a conviction even where the video tape or photograph of the child's engagement in sexual conduct is not shown to third persons and is in fact only viewed by the defendant. Bishop, 46 So. 3d at 79. Therefore, even if the jury concluded that the only "audience" for the photographs was Petitioner, no critical error rendering the trial fundamentally unfair has been shown.

Second, the state law determination of this state law claim is entitled to deference unless the Court finds that the adjudication of the claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner has provided no basis to conclude these requirements for federal habeas relief have been met.

For these reasons, habeas relief should be denied on Ground 13.

## Ground 14:  Motion to Vacate Judgment and Sentence on Counts 3-76

By his title to this claim, Petitioner appears to be contending that the trial court erred in refusing to vacate judgment and sentence on Counts 3 through 76.  ECF No. 1 at 17.  His argument in this claim consists only of the allegation that "[a] lot of the pictures were duplicate copies" and "[a]t sentencing it was agreed that this should be considered one episode, as was a double jeopardy issue and raised in the J.O.A."  ECF No. 1 at 17. He makes no further explanation of the basis of a constitutional claim in this Court.

Respondent notes first that there was no judgment and sentence on Counts 3 through 76 to be vacated, and for that reason, Petitioner is not in custody on any conviction and sentence arising from those verdicts.  ECF No. 11 at 42.  Respondent argues again that because Petitioner is not in custody on any conviction and sentence arising from these counts, this Court does not have jurisdiction to consider the claim.  Diaz, 683 F.3d at

1264 (citing <u>Maleng</u>, 490 U.S. at 490-91).  Respondent further argues that the claim presented only a state law question that is founded on a claim of double jeopardy, and how the state court resolves a double jeopardy challenge is a question of state law.  ECF No. 11 at 42-43.  On direct appeal to the state First District Court of Appeal, Petitioner contended both that the trial court should have granted a judgment of acquittal on Counts 2 through 76 on double jeopardy grounds and that the trial court erred in denying a motion to vacate judgment and sentence on Counts 3 through 76.  Ex. H. at 12, 14.

    To the extent that this claim is based on double jeopardy, that is a question of state law not generally cognizable on habeas review.  *See, e.g.,* <u>Williams v. Singletary</u>, 78 F.3d 1510, 1517 (11th Cir. 1996) (relying on Florida Supreme Court authority for remedy to double jeopardy violation).  Petitioner contended on direct appeal that trial court erred in refusing to vacate the counts because each one "relates back to the Motion for JOA also because of the fact that the spillover effect . . . may have had an avalanche effect with respect to the jury's ability to judge each act charged independently to determine whether the [state] had fully met its burden."  Ex. H at 14-15.  The district court of appeal affirmed.  Ex. J; <u>Rightmire v.</u>

State, 987 So. 2d 83 (Fla. 1st DCA 2008).  This ruling constitutes a decision on an issue of state law on the merits.  Wright, 278 F.3d at 1254.

To the extent his motion to vacate can be construed to be a motion to vacate the unadjudicated jury verdicts on the grounds that allowing the alleged duplicative photographs into evidence prejudiced Petitioner, such again is a state law question resolved on the merits against Petitioner.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67; Carrizales, 699 F.2d at 1054-55.

Regardless of whether this claim is not cognizable on habeas review because Petitioner is not in custody on any conviction or sentence arising from Counts 3 through 76, and even assuming this state law question can be heard in this habeas proceeding, the claim should be denied on the merits.  Even if presentation of 75 additional photographs could have had a spillover effect on the jury's ability to decide each count independently, Petitioner has demonstrated no prejudice from that spillover effect.  Petitioner was not convicted or sentenced on Counts 3 through 76, but was sentenced on only one count based on the court's determination that the photographs, in the aggregate, were a single episode.  Further, vacating the jury verdicts on those counts can have no effect on his sentence.

In addition, even if Counts 2 through 76 had been prosecuted as just one count and one criminal episode, all the photographs could have been presented to the jury to prove one count of child pornography under section 827.071(4), Florida Statutes.  The jury would have been able to view the photographs and consider all of them along with the victim's testimony in reaching a verdict.  *See, e.g.*, Wade v. State, 751 So. 2d 669, 671 (Fla. 2d DCA 2000) (holding that in one criminal episode under section 827.071(4), multiple copies of three different photographs provided evidence of possession with intent to promote child pornography).  Petitioner has not demonstrated any prejudice arising from the trial court's refusal to vacate the jury verdicts on Counts 3 through 76, nor has he shown that the alleged state law errors were so "critical or important to the outcome of the trial" that they rendered the entire trial fundamentally unfair.  *See* Tejada, 941 F.2d at 1560.  This showing has not been made and the state law question should not be revisited in this proceeding.

Petitioner has not shown that the adjudication of the claim in state court resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.  Petitioner has provided no basis to conclude

these requirements for federal habeas relief have been met.

For all these reasons, habeas relief should be denied on Ground 14.

### Ground 15: Failure to Raise Nelson Hearing Issue on Appeal

In this final claim, Petitioner contends that appellate counsel was

ineffective for failing to argue on direct appeal that the trial court erred in

refusing to appoint new counsel for him after a <u>Nelson</u>[5] hearing, and

allowing Mr. Morris to continue to represent him.  Petitioner also argues

that the <u>Nelson</u> hearing "should have been followed by a <u>Faretta</u>[6] hearing

at which the trial court should have found Petitioner could not represent

himself and should have appointed new counsel.  ECF No. 1 at 17-18.

Petitioner filed a petition in the First District Court of Appeal alleging

ineffective assistance of appellate counsel for failing to raise as trial error

the trial court's inadequate "<u>Nelson</u>" hearing prior to opening argument and

refusal to appoint new counsel or conduct a full <u>Faretta</u> hearing.  Ex. FF at

3-7.  The district court denied the petition on the merits.  Ex. GG; <u>Rightmire</u>

<u>v. State</u>, 8 So. 3d 462 (Fla. 1st DCA 2009).  Respondent contends that

because the <u>Nelson</u> hearing was properly conducted, appellate counsel

---

[5] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973) (requiring the trial judge to make certain inquiries when a defendant asks to discharge appointed counsel).

[6] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

was not ineffective in failing to raise the trial court's ruling on appeal.  ECF No. 11 at 43-46.

The claim should be denied on the merits.  In order for appellate counsel to have provided deficient representation, Petitioner must show that the issue would have had merit on appeal.  "If a legal issue 'would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000).  The colloquy of the Nelson hearing conducted by the trial court demonstrates that the court committed no reversible error in finding that Petitioner's trial counsel was not ineffective and holding that new counsel would not be appointed.  The following transpired at the hearing:

> MR. MORRIS:  Judge, Mr. Rightmire has made some expressions to me that I think probably need to be of record now rather than later, in the form of I guess it is Nelson.  But I think that we should address that now rather than later.
>
> THE COURT: Okay, all right. Mr. Rightmire, do you want to - -
>
> MR. MORRIS:  Do you need him to come to the microphone, Judge?
>
> THE COURT:  Yes.
>
> THE DEFENDANT:  Yes, ma'am.  I have reservations about the ability of my lawyer to fairly represent me in this matter.

THE COURT:  What has he done that you think is incompetent?

THE DEFENDANT:  Well, first off, from the very beginning, on March 5th, I sent him a letter requesting certain things be done, certain depositions be taken in this matter.  And also I requested - -

THE COURT:  Like what certain depositions?

THE DEFENDANT:  Pardon me?

THE COURT:  What certain depositions?

THE DEFENDANT: The young lady in question, her mother.  I can't think right off the top of my head at the moment.  But like discovery, I wanted that, a number of things.  I never got anything back, any feedback from that.

I requested discovery on three or four different occasions.  I was told, yeah, we will send it, I never got it.  I requested to see the evidence against me.  I was told I couldn't see the evidence against me.  And I ended up not seeing the evidence against me until this past Monday.

And then today, my attorney informs me that he has a personal - - as a personal feeling, he does not feel that I'm worth defending.  He has some personal issues with me in that matter.  I asked him, you know, if he could defend me and forget his - -  forgo his personal issues.  He said that he could, that he could separate it.  But I don't feel he can.  He believes that - - I can't even remember the words he used, but he considers me pretty darn low right now.

And he said that I had no moral standing, I had no moral turpitude or anything else.  I was going to let this young lady come in and testify, and I shouldn't, that that was pretty low of me, and things like that.  You know, some really bad stuff in my opinion.

But - - and if I had had my druthers, you know, at one point I wanted to let him go, wanted to fire him.  I didn't know how to do so and I was kind of talked out of it.  But, you know, if I could fire him right now, I would, and still continue with the trial

but there is no way I can do that. I'd love to get this over with. I leave it in your hands.

THE COURT: Okay. Mr. Morris, you have the opportunity to respond. I guess first would be depositions. Were depositions taken or not? And, if not, was there a strategy behind it?

MR. MORRIS: They were taken.

THE COURT: Okay.

MR. MORRIS: And they were taken recently, based on Mr. Allman's and my schedule.

THE COURT: Okay. And what about discovery, him wanting it and saying he wanted it and he never got it until - -

MR. MORRIS: Well, first - -

THE COURT: I guess he asked three or four times, and says he never got it until last week.

MR. MORRIS: I know that Mr. Villeneuve, who was his prior counsel, provided him discovery materials in the form of the police reports and things of that nature. The way that I know that is because Mr. Rightmire wound up providing some of that information to one of his friends, Phillip, who I have met with in my office.

There isn't a lot of discovery in this case. There is a probable cause affidavit by Detective Lombardo, there is a report generated by Detective Sam Bruce, as he was cross-sworn with the U.S. Marshal's service, and then there are some reports from FDLE that I obtained recently from Mr. Allman related to [the victim]. And I have had an opportunity to review all of that with Mr. Rightmire.

Most recently, when we were in court the other day - - the reports from FDLE are just simply what they analyzed, what was found, and so forth. And it doesn't say anything earth-shattering. But I think that he has had an opportunity to review each of those items.

THE COURT: Okay. And what about his claims about your personal feelings, that he wasn't worth defending was one thing he said.

MR. MORRIS:  I didn't say that he wasn't worth defending.  I told Mr. Rightmire that given the facts of the case, I think that I have some legal arguments that I'm able to make.

But I often explain to my clients that I normally have three types of clients.  The first type demands strict proof and denies everything.  The second says, what do they have on me, what don't they have on me?  And the third type take a more moralisitic view of things of, I need to do the right thing.  I encouraged Mr. Rightmire about ten, 15 minutes ago that he is probably best situated to do the right thing because we have a - - and I believe that I would be able to negotiate with Mr. Allman the dismissal of a lot of counts.

I have some concerns that after - - at the end of the day, from a, I don't know, a moralistic perspective or a doing-the-right-thing perspective, that there will have been a 17-year-old victim who will have testified, the evidence is overwhelming with respect to many of the counts.  And I told him that I have some personal opinions about the case, but it doesn't preclude me from being able to defend him.  And I expressed those personal opinions to him, and I think I'm entitled to do that.

THE COURT:  Were those personal opinions based about what you saw as the strength of the State's case, based on - -

MR. MORRIS:  Absolutely. I mean, and I'll give you a prime example.  One of the counts alleges penile penetration of the victim's mouth, and there is a photograph of it.  And it is pretty overwhelming.  And I have great difficulty in finding a way to combat that before a jury.

And in my mind's eye, the way that I expressed it to Mr. Rightmire is if there is essentially a foregone conclusion as to what the jury is going to arrive at in terms of a verdict, why are we going through this exercise, was the way that I expressed it to him.

THE COURT:  All right.  I find that you are credible in your explanations, that there is nothing incompetent about that role.

Cases are - - you know, defense lawyers don't make the cases.  The State makes the cases.  And cases are weak, cases are strong, cases are overwhelmingly strong and some

cases are overwhelmingly weak. And every defense attorney will have an opinion about what that is. That is not a personal judgment. What it is their job professionally is to tell you what they think about why, and to give you an expression of what they think other people may look at. So that you can help decide what strategies you want to employ. The decision on that is totally up to you. But that's what they're paid to do, or in your case he is appointed. But he is being paid by the State of Florida to do exactly that.

So I find that there is no incompetent representation.

Now, Mr. Rightmire, you have the absolute right to represent yourself. If you choose to do that, that's fine. But we are not continuing the trial in order for you to prepare to represent yourself. And if you do represent yourself, I do not appoint standby counsel. So Mr. Morris would be free to leave and you'd be on your own. I obviously don't think that's a very good decision, if you want to make that, but I do feel that I should tell you that that is your absolute constitutional right to represent yourself, regardless of how great or poor I think a lawyer is. It doesn't matter. That's an irrelevant question. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you wish to represent yourself?

THE DEFENDANT: Ma'am, I do not have the competency in the legal matters to do so.

THE COURT: That's fine, all right. Then we will proceed as scheduled.

Ex. E 5-11.

The trial court conducted the required inquiry concerning the reason

why Petitioner sought to discharge counsel and whether there was

reasonable cause to believe the court-appointed counsel was not rendering

effective assistance to Petitioner. Petitioner was asked for the reasons for

his request.  The reasons were specific, and trial counsel was asked to

respond in specifics to the allegations, which he did at length.  Once the

trial court determined that no ineffective assistance had been shown, the

court explained to Petitioner that he would not be appointed a new counsel,

and his option was to proceed with counsel or represent himself, as was his

right.  This colloquy is in accord with the requirements governing <u>Nelson</u>

hearings.  *See* <u>Hernandez-Alberto v. State</u>, 889 So. 2d 721, 728 (Fla.

2004) (quoting <u>Nelson v. State</u>, 274 So. 2d 256, 258-59 (Fla. 4th DCA

1973)).  Because the trial court conducted a proper <u>Nelson</u> hearing, and

the colloquy supports the finding that trial counsel was not ineffective and

should not be discharged, an appellate claim of error would have been

meritless.  Therefore, appellate counsel was not ineffective in failing to

appeal the trial court's denial of Petitioner's request to discharge counsel

and appoint new counsel.

Petitioner also contends that appellate counsel was ineffective in

failing to appeal the lack of a proper <u>Faretta</u> hearing after the <u>Nelson</u>

hearing.  This claim would also have been found meritless on appeal.  The

trial colloquy shows that when the trial court refused to discharge trial

counsel, Petitioner was advised of his right to represent himself rather than

proceed with trial counsel.  He responded that he did not wish to do so.

Because no unequivocal request was made for self-representation, the trial court was not required to provide a full <u>Faretta</u> hearing.

The obligation to conduct a full <u>Faretta</u> hearing, at which a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's "clear and unequivocal" assertion of a desire to represent himself.  *See* <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990) ("In recognition of the thin line that a district court must traverse in evaluating demands to proceed *pro se,* and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."); <u>Dorman v. Wainwright</u>, 798 F.2d 1358, 1366 (11th Cir. 1986) ("Insofar as the desire to proceed *pro se* is concerned, [a] petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed *pro se*] was not made.").  The record does not show that Petitioner made an unequivocal or unambiguous request to represent himself.  Accordingly, appellate counsel was not ineffective in failing to appeal a claim of error that the trial court failed to conduct a <u>Faretta</u> hearing.  Unless an unequivocal request is made for self-representation,

the failure to hold a <u>Faretta</u> hearing is not contrary to or an unreasonable application of Supreme Court precedent, including <u>Faretta</u>.  *See* <u>Gamble v. Sec'y Dep't of. Corr.</u>, 450 F.3d 1245, 1249 (11th Cir. 2006).

The state appellate court denied Petitioner's claim that appellate counsel was ineffective in regard to the issue of the trial court's conduct of the <u>Nelson</u> hearing and failure to provide a full <u>Faretta</u> hearing.  Petitioner has failed to show that the state court's adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner has provided no basis to conclude these requirements for federal habeas relief have been met.

For these reasons, habeas relief should be denied on Ground 15.

## <u>Conclusion</u>

Based on the foregoing, Petitioner Richard Rightmire is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 15, 2016.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**